Matter of Fisher v Perez (2018 NY Slip Op 07014)





Matter of Fisher v Perez


2018 NY Slip Op 07014


Decided on October 18, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 18, 2018


[*1]In the Matter of YANIRA J. FISHER, Appellant,
v
MICHAEL PEREZ, Respondent.

Calendar Date: September 12, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Alena E. Van Tull, Binghamton, for appellant.
Michelle E. Stone, Vestal, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from an order of the Family Court of Broome County (Pines, J.), entered August 16, 2017, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for, among other things, custody of the parties' child.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child born in 2016. When the child was born, the father was in state prison, and the mother resided with her father (hereinafter the maternal grandfather). In May 2017, the mother petitioned for custody of the child, and Family Court issued a temporary order awarding sole custody to the mother with supervised parenting time as the parties could agree to the father. In July 2017, the mother filed an amended petition for custody wherein she sought permission to relocate with the child to Texas. Following a hearing, Family Court denied the request and awarded the parties joint legal custody with supervised parenting time to the father. The mother now appeals.[FN1]
Where a parent seeks to relocate with a child, the request "must be considered on its own merits with due consideration of all the relevant facts and circumstances and with predominant emphasis being placed on what outcome is most likely to serve the best interests of the child" (Matter of Tropea v Tropea, 87 NY2d 727, 739 [1996]; see Matter of Hoffman v Turco, 154 AD3d 1136, 1136-1137 [2017]). In such a case, factors to consider include "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and child through suitable visitation arrangements" (Matter of Cowper v Vasquez, 121 AD3d [*2]1341, 1341-1342 [2014] [internal quotation marks and citation omitted], lv denied 24 NY3d 913 [2015]).
Here, because Family Court had not yet issued an initial custody determination, strict application of the Tropea factors was not required (see Matter of Varner v Glass, 130 AD3d 1215, 1216 [2015]). Rather, "an initial custody determination must be based on the best interests of the child, upon consideration of such factors as the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of O'Hara v DeMarsh, 161 AD3d 1271, 1271-1272 [2018] [internal quotation marks and citations omitted]). "[T]he effect of [the requested] relocation [is] among the relevant factors to be considered in determining the child['s] best interests" (Matter of Varner v Glass, 130 AD3d at 1216).
During the brief fact-finding hearing, the mother testified that, from the time she met the father, he had been incarcerated — first for gang-related activity, then for a parole violation stemming from a domestic violence incident involving her — and he was "[o]n the run" throughout the majority of her pregnancy and was incarcerated again after the child was born. Although the record is not entirely clear, the father was released from prison when the child was almost one year old. The mother testified, without contradiction, that the father provided no support during her pregnancy and that, following the child's birth, he provided diapers and wipes or money a "handful" of times. According to the mother, she would call the father to "ask[] . . . for something," and he would decide whether he would provide anything or see the child. The mother further testified that the father would see the child for a couple of hours at a time and that weeks or months would pass without any contact between them.
At the time of the amended petition, neither parent was employed. The mother provided for herself and the child with public assistance. Although the mother and the child resided with the maternal grandmother in Texas for a period of time, the mother thereafter returned to New York — where the child was born — because she "was advised" that it was necessary to seek custody. Upon her return, the mother and child resided in a home with the maternal grandfather, who paid their housing expenses. The mother filed the amended petition after the maternal grandfather lost this home to foreclosure and decided to return to Texas. Consequently, according to the mother, when the maternal grandfather leaves, she and the child will have neither a home nor any familial support. The mother explained that, if permitted to relocate, she and the child would live with the maternal uncle and his child and that her family in Texas would help with child care and transportation.
As to the father's desire to have unsupervised parenting time, the mother expressed concern that the father had never spent more than a few hours with the child on a sporadic basis and always while she was present. The mother testified that the father had hit her, specifically recalling two occasions following the birth of their child — once while she was holding the child. She did not believe the child would be safe with the father, recalling a visit at a local park when the father told her to take the child and leave because he saw someone "he had a problem with" and believed there was a "safety issue" for them.
The father, who was not represented by counsel, initially consented to the mother's plan to relocate before asserting that he wanted unsupervised parenting time. When pressed, he confirmed that he did not consent to the relocation because Texas was "far." During his testimony, the father confirmed that he spent nearly seven years in prison prior to the child's birth, that he was in prison when the child was born in April 2016 and until he was released in March 2017 and that there was a felony weapon charge pending against him. The record includes no evidence regarding his relationship with the child, nor does it reflect whether or how he planned to establish a relationship with the child. Even during the hearing, he acknowledged without remorse that, during the short time following his release in March 2017, a physical altercation with the mother resulted in police involvement.
We find that Family Court's determination denying the mother's relocation request and granting the parties joint legal custody is not supported by a sound and substantial basis in the record. If not permitted to relocate, the mother's only potential resource — besides public assistance — would be the father. Given the father's significant criminal history — which includes domestic violence against the mother — this is not a situation we can countenance. Further, there is nothing in the record to suggest that the father is willing or able to assist the mother or the child in any way. The undisputed evidence was that the father's financial support and parenting time was limited, sporadic and offered at his whim. Indisputably, the mother has been the child's primary caretaker, the father provided almost no financial support and his very limited relationship with the child existed only through the mother's efforts. Moreover, given the father's history and evidence of domestic violence, we do not believe that joint legal custody is in the child's best interests (see Matter of Fountain v Fountain, 130 AD3d 1107, 1108-1109 [2015]). We note that, although not dispositive, the trial attorney for the child did not oppose the mother's petition or her relocation request (see Matter of Davis v Ogden, 109 AD3d 539, 540 [2013]).
We are mindful that our holding results in the child residing a significant distance from the father. The record indicates that the mother has consistently made the effort to remain in contact with the father, to send pictures and to initiate telephone calls and visits. We discern no basis upon which to conclude that she will not continue to do so. As the child grows, such contact will become more important and have a greater impact on the father's ability to establish and maintain a relationship with the child. Accordingly, we remit this matter to Family Court to establish an appropriate schedule for telephone calls and parenting time with the father.
Garry, P.J., McCarthy, Aarons and Rumsey, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed that part of the petition seeking sole legal custody of the child and permission to relocate to another state; petition granted to said extent and matter remitted to the Family Court of Broome County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The attorney for the child on appeal has submitted a brief in support of the mother's position.